The bills then stated that the testator left a large personal estate, consisting of his share in the said partnership and of specific articles and debts; and that Nathan Chaffin, the younger, took the estate into his possession and disposed of the two tracts of land directed to be sold, and all the personalty, except the slaves bequeathed to the plaintiffs John A. and George H., who took them into possession, as legatees, by the consent of said Nathan, the younger; and that the assets, thus in the hands of the said Nathan, the younger, were of much larger amount than the testator's own debts, or any for which his estate ought to be liable. That in March, 1823, the said William W. Chaffin died intestate, and that administration of his estate was also taken by Nathan Chaffin, the younger, who reduced into possession his estate to a large amount. That as surviving partner of the firm of W. W. Chaffin Co., the said Nathan, the younger, also took into his hands, or might have collected, effects sufficient to discharge all the joint debts and leave a large surplus for division among the partners. *Page 214 
The bills then charged that Nathan Chaffin, the younger, gave out that the separate estate of W. W. Chaffin was insufficient to pay his separate debts, much less any part of the debts of the firm; that he also gave out that he, Nathan, the younger, was not a member of the copartnership, and that the effects of the firm were insufficient to pay its debts; and that after applying all the assets of the firm, a large balance of their debts remained unsatisfied, for which he alleged the estate of his testator to be liable; and that, for the satisfaction thereof, he had applied the legacies to the plaintiff Mary, and other parts of the personal (257) estate, except the slaves bequeathed to the other two plaintiffs.
And as to them, the bills charged that a creditor of the firm had obtained judgment against the plaintiff John A. and the defendant Nathan, as executors of the testator, of which the beneficial interest was in the defendant Nathan, by assignment to a trustee for him, who had caused an execution to be levied on the said slaves so bequeathed to the plaintiffs, and threatened to sell them. The bills prayed an account of the estate of his testator, and that the legacies to the plaintiffs might be made good and the residue distributed according to the will; that if the said firm should be found to be insolvent, the defendant Nathan might be declared to have continued a partner up to the death of the testator; and that said defendant and William W. Chaffin might each be held liable for an equal third part of the deficit; and that the defendant Nathan might be held bound so to administer the estate of his intestate, William W., that it might be applied thereto.
The material parts of the defense set up in the answer of Nathan Chaffin, the younger, were that the copartnership formed in 1812 (of which he admitted himself a member) was dissolved on 8 May, 1818, by agreement between the partners; that he then received merchandise to the value of about $2,000, and that the other two partners received together to the value of $4,000, and then entered into a new business, in which Nathan, the elder, and William W. were the sole partners, under the same firm and name of W. W. Chaffin Co., which continued until the death of the said persons. The answer stated that up to May, 1818, the business had been profitable, though no account had been stated from which the profits might appear. That the books were retained by William W. Chaffin, who had been the active partner in the first firm, and was also such in the second, for the purpose of settling the business by collecting the debts owing to the concern, and paying those owing by it; after which he was to divide the surplus among the partners. That William W. collected the assets and paid all the debts thereout, as the defendant believes, from the circumstance that no person had, as a creditor of that firm, preferred any claim against him. That (258) he frequently called on William W. for a statement of the concern, *Page 215 
as he was satisfied that money was coming to him on it, and that William W. did not pretend to deny the truth of his claim, but deferred the matter upon various pretexts.
This answer then stated an account of the administration of the estate of William W. Chaffin, and also an account of the last concern of William W. Chaffin Co., whereby it appeared that the separate debts of William W. would not be paid by his separate estate, and that the joint funds would not satisfy the joint debts of the partners, but that a large balance remained to be paid out of the estate of the testator, and that all the legacies would be required for that purpose, besides the fund provided in the will for the payment of debts.
Pending the preceding suit, Nathan Chaffin, the younger, filed his bill against John A. Chaffin and George H. Chaffin, and therein stated the devises in the will of the testator of the two tracts of land to be sold for the payment of the debts, and of the lands and slaves to the defendants respectively; that the executors, Nathan and John A., exposed the two tracts of land for sale, and sold one tract; but that John A. bid off the other, and refused to concur in a sale thereof, and had possession of it; that he had sold the land devised to him with the view of defeating the creditors of his testator, and particularly his coexecutor, Nathan.
The bill then stated the administration by this plaintiff of the assets of his intestate, William W. Chaffin, of the firm of W. W. Chaffin Co.,; and that, after exhausting all those funds, a large sum remained unpaid of the debts of the firm, for which the estate of the testator was liable; and that the same had been paid by the plaintiff, or were then reduced to judgments against the executors, whereby all the assets of the testator had been exhausted, and it was rendered apparent that it would require the whole estate of the testator, personal and real, to satisfy the debts so paid or so outstanding. This bill prayed that all the proper accounts might be taken, that the tract of land bid in by John A. might be resold, and that the legacies and devises to the two defendants might be declared liable to and disposed of for the satisfaction of the said unpaid debts.
The answers in substance set forth as defenses the matter (259) alleged by these defendants in the bill brought by them.
The causes were heretofore heard, and the court, upon the proofs, declared the copartnership, of which the defendant Nathan Chaffin, the younger, was a member, to have been dissolved on 8 May, 1818, as stated in the answer. It was then referred to the master to take an account of the testator's estate, and of the administration thereof by the defendant Nathan, including the interest of the testator in, or liability for, the firm of W. W. Chaffin Co. *Page 216 
The master reported that the debts of W. W. Chaffin Co. paid by the defendant Nathan, amounted, over and above the assets of that firm that came to his hands, to the sum of $4,909.64; of which the one-half was immediately chargeable to the testator's estate, and the other half would be so chargeable, unless paid by the estate of William W. Chaffin. In order to ascertain how much of the loss that estate could pay, the master then proceeded to take an account of the estate of William W. Chaffin, and found that it had been fully administered in the discharge of his separate debts, and, indeed, that a balance of $620.25 was due to the administrator. In the account of the estate of Nathan Chaffin, the elder, therefore, the master charged to that estate the whole loss of the copartnership, which, with the interest thereon, made a balance in favor of the executor of $5,951.62. To the report the original plaintiffs and the defendants in the second bill excepted. Upon the taking of the accounts, the other parties examined Nathan Chaffin, the younger, upon interrogatories as to many of the points to which the exceptions related.
The first exception is that in stating the accounts of W. W. Chaffin Co., the master has improperly allowed the defendant Nathan for the payments of sundry debts specified, amounting to $7,900.44, as the debts of the last firm, whereas they were the debts of the first firm, of which (260) he (Nathan, the younger) was a member. In connection therewith the same parties except, secondly, that the master has not, but ought to have, stated accounts between the two copartnerships, instead of assuming that all the outstanding debts were due from the second; and should have required the defendant Nathan to file a statement of the balances of debts due by each of the firms, as he had the custody of their books.
The first exception is unsupported by the proofs, and must therefore be overruled. Upon looking into the evidence, there could not be the least doubt that all the debts are properly those of the second firm, excepting only two items of $556 and $1,356.03. The other debts are upon bonds and notes given in the name of W. W. Chaffin Co. long after 1818, and in most instances shortly previous to the deaths of the partners in 1823. Being pressed by that circumstance, the counsel for the exceptions have endeavored to show that there were outstanding debts of the first firm when Nathan, the younger, retired, and thence to infer that some of the latter debts were contracted to raise funds for the *Page 217 
discharge of the former. But the inference is too forced to be acted on by the Court in the incidental manner now required — especially as in most of the cases, besides the presumption from the dates of the securities, there is direct proof that the debts were for money loaned or goods sold to the second firm. In addition, it is to be remarked that the books of accounts of both firms are produced before the master, and from an inspection of them it does not appear that the second paid any money or assumed any debt for the first; for there is not even an account raised between them. The defendant Nathan, also, in his examination upon the acceptant's interrogatories, states explicitly his belief that every debt of the old firm was paid out of its effects, collected by the managing partner, W. W. Chaffin; above all, it is in proof, by witnesses, that Nathan Chaffin, the elder, and younger, both claimed to be entitled to profits made in the first business, and called on William W. Chaffin to state an account of that business and pay to them their shares. This he neglected to do; but, at no time during the five years that elapsed between the dissolution and his death did he intimate to the other (261) partners that there was a loss on that business, or claim anything from the defendant Nathan on that score; but, on the contrary, clearly admitted the contrary by paying large sums on Nathan's personal account with both firms. With the exception of the two items already specified, the first exception must therefore be overruled. So also must the second exception, for the same reasons. It is not true that the master has assumed anything in favor of the first firm; for there is no evidence that any of the debts ought to be charged to that firm; nor was he bound to state an account between the firms, when the parties did not furnish him with any data on which to found it; and the books, as already mentioned, do not profess that there were any dealings between them. If such an account were material to the exceptants, they ought to show it, and make out their view of it from the materials, thus as much in their power as the master's. Nor was Nathan Chaffin bound to do more than deposit the books in the office for the use of the other party, since he founded no charge upon them.
With respect to the sums of $556 and $1,356.03, not yet disposed of, a reference to the evidence somewhat more particular is requisite. The former sum is claimed by Nathan Chaffin, the younger, on a note made to himself by W. W. Chaffin Co. On 25 January, 1823. The latter is for a sum paid to the bank at Cape Fear, being the balance of a debt that had existed for some years, and due upon the note of William W. Chaffin, endorsed by the defendant Nathan and another person as sureties; which debt is alleged by the defendant to be really the debt of the last firm of W. W. Chaffin Co. Upon the nature of these two debts, the exceptants examined the party, Nathan Chaffin, minutely before the master; and in *Page 218 
his answers to the interrogatories he gives a particular and, as far as can be perceived, a consistent and credible account of them. It is that he had an account with each firm for his personal dealings, consisting of purchases of merchandise on his part and of sales of tobacco and other produce to the stores; and that he had, besides, made cash (262) advances for the first firm, before 1818, to the amount of about $8,000, which was reduced by returns of cash to about $5,000, when he retired; that he, Nathan, owed a debt to the bank of about $2,000, which, it was agreed, some time after 1818, the new firm should assume, and for the amount charge him in account; and that the same was then added to the existing debt of the firm at bank, and a note given for the whole, in the name of W. W. Chaffin, but really for the firm; that afterwards, viz., on 25 January, 1823, this defendant settled with William W. Chaffin his personal accounts in both firms, and thereupon found a balance due to him, upon the whole settlement, of $556, for which W. W. Chaffin Co.'s note was given to him. In this settlement, he admits, were included the balance due on the note of $8,000, and also debts from him to the old firm of $4,105.63, as appears in their books. The residue consisted of his dealings in the new firm and of the bank debt aforesaid. In this statement this defendant is supported by an inspection of the books of both firms, so far as respects the amount of his personal dealings, and that entries were made therein by W. W. Chaffin himself, of the date of the settlement. But the books are very imperfectly kept, and do not show the particulars of the settlement, nor contain an entry of either note to Nathan Chaffin, the younger, nor of the charge of the sum assumed for him at bank. But the transactions at bank appear, by the testimony of the cashier, to have been correctly stated by the defendant in all respects, except that the cashier does not know whether the debt due upon the note of W. W. Chaffin was his own debt or that of the firm. But, upon that point, a person who was a clerk in the store states that he understood the money went to the use of the firm, and that the debt was theirs, although no entry was made of it. Moreover, John A. Chaffin, one of the original plaintiffs, who had also been a clerk in the store, and was one of the executors of his father, Nathan, the elder, paid out of the estate of his testator a part of that debt, as being a debt for which his testator was liable.
(263) Under the circumstances, the Court must regard the allowance of these sums as credits of the defendant Nathan in the disbursements of the assets of the firm, as proper. The form of the instrument makes it prima facie evidence of the sum of $556 being a debt by the new firm. The presumption is fortified by the fact that it was against the interest of W. W. Chaffin to make it a debt of the new firm, if it were really not so, as it made him liable to pay one-half instead of one-third *Page 219 
of it; and there is no reason to suspect him of a design to do injustice to his father for the sake of his brother. The same conclusion with reference to the other sum of $1,356.03 could not have been reached, perhaps, with the same entire satisfaction had not the exceptants examined the party before the master and read his examination on the hearing. It has been thus made evidence for him, so far as it is responsive to the interrogatory, in the same manner and upon the same principle that the defendant's answer is evidence for him. In suits for accounts it is impossible the pleadings can put every matter precisely in issue and, therefore, when the parties go before the master, the plaintiffs may help out their bill by special interrogatories to the other party. But then the interrogatories must be looked at in the light of being particular charges supplemental to those more general ones of the bill; and so the responses are, in this sense, to be transferred to the answer, and made evidence in the cause, though subject to contradiction. With the whole of this evidence before us, there can be no doubt of the justice of this item as well as the others. The whole of the first exception must therefore be overruled, as also must the ninth exception, which is specially confined to this sum of $1,356.03 as being the own proper debt of Nathan, the younger, or of William W. Chaffin, and not the debt of either firm.
The third exception is unfounded. The defendant Nathan has filed an account of the assets of the second firm that came to his hands, amounting to $3,122.40; upon which the master has based his account current between that defendant and W. W. Chaffin Co.
The next two exceptions, 4th and 5th, assume that there was a loss on the partnership, and insist that the defendant Nathan should have retained out of the assets of his intestate, William W., for the amount of the debt of the intestate to the father, in respect of such loss, and pleaded the same in bar of the creditors of William, or, as (264) administrator of William W., confessed judgments to the creditors of the copartnership and pleaded the same in bar of his intestate's separate creditors, so as to give the estate of the testator, Nathan, the elder, the aid of the assets of William W. in paying the debts of the firm.
There are several reasons why these exceptions cannot be sustained. In one view, the exceptants suppose that as executor of the father, the defendant might have retained of the assets of the brother to make good the debt to the former on account of the losses. If this be admitted, it can avail the exceptants very little, for the claim of the father's estate upon the son's would be but a simple contract debt, and all the separate debts paid or retained out of the assets of William W. Chaffin were due upon specialties, except the sum of $369.79, paid in the lifetime of William W., by the defendant Nathan as his surety by note. The truth is, however, that the executor did not and could not know — as far as *Page 220 
appears to us — that his testator would be a creditor of his intestate upon the settlement of the business, nor that the assets of the firm would not discharge all its liabilities. Upon inspecting the books, they appear to have been so wretchedly kept that no person could ascertain the state of the business from them, or know to whom the firm was indebted, or how the accounts between the partners would stand. There is in them no stock account, cash account, profit and loss account, merchandise account, or an account of any creditor of the concern. They simply consist of accounts against persons to whom goods were sold, and of the payments made therefor. The consequence was that it was only after all the debts of the firm were paid and the business adjusted that it did appear or could appear to the executor that a retainer by him out of the assets of the intestate would be necessary for the security of the testator's estate. Those two exceptions are, therefore, overruled also, except as to the before mentioned sum of $363.79. As to that sum, an interesting question is presented, which the state of this case will, perhaps, make it unnecessary to decide, as, probably, over and above that, the debt of the testator's estate to the party, Nathan, the younger, will exceed the value of (265) the assets which he can reach. That question is whether, inasmuch as this is a simple contract debt, the money retained out of the assets of the intestate on that account can be kept by Nathan exclusively for his own use, or ought not to be applied in whole or in part towards the claim of the father's estate, which is of the same dignity. We incline to the opinion that he who undertakes the office of executor is not at liberty to take care of himself to the exclusion of his testator's estate, and that the money in the defendant's hands ought, at least, to be ratably divided between them; for, admitting that the separate estate of a partner must first pay his separate debts, yet the debt of one partner against another, in respect of a loss in the joint business, when ascertained, is a separate debt; and, therefore, the claim of the testator, and of the defendant, as to this sum of $363.79, stand in all respects on the same footing. For the reason already mentioned, the question as to this particular sum is reserved for the present.
The 6th and 8th exceptions present, in different forms, substantially the same questions that have been already decided. In taking the account of the assets of the firm in the hands of the defendant, he is charged with $1,528.72, as the debt of the testator, for his personal dealings with the firm. Of course, the defendant must be credited with the same sum in his account with the testator. This does no injustice, for by the insolvency of the firm and of the other partner, the father has become the firm in respect to creditors, and those entries are nothing more, in fact, than cross-entries. So of the sum charged to the testator as the share of W. W. Chaffin of the losses of the partnership, it must *Page 221 
be said that the objection is only as to the manner of the master's stating it. In substance, the report charges to the testator all that his executor paid for the firm, after exhausting the assets of the firm; and that is clearly right, when it is ascertained that the other partner is insolvent. The 6th and 8th exceptions are, therefore, disallowed.
The 10th exception embraces several items of retainer by Nathan, the younger, against the estate of his intestate, William W. Chaffin, amounting in the whole to $3,052.30. As to the sums of $389.61, $107.56, $96.09, $250.69, and $430.00, parts of that larger sum, the Court (266) thinks the credit supported by plain and satisfactory vouchers, namely, notes and bonds of the intestate to the defendant Nathan. It was said that there was a presumption that these debts were included in the settlement of 25 January, 1823, on which the note for $556 was given. But the presumption is to the contrary, as that was the note of W. W. Chaffin Co., and these are the private debts of William W. Chaffin alone. The other items, however, require explanation, and they will be referred back to the master for further inquiry.
One is for a note, dated 15 December, 1821, for $339, payable six months after date to N. Chaffin, without saying senior or junior, and witnessed by A. H. Chaffin. It is objected to because it is torn in two, and was probably canceled, and because it was included in another note of the same date for $402, payable a year afterwards, to Nathan Chaffin, administrator of Peter Dowell, and also witnessed by A. H. Chaffin. The defendant, on his examination, stated that the note for $339 was given for a negro sold by him as administrator of Dowell, and that the clerk of the sale, A. H. Chaffin, took and delivered it to him, in its present condition, saying that he tore the paper as it is in separating it from other writing on the same sheet. That statement is supported by the testimony of A. H. Chaffin. This may be so, and probably is, from the circumstances that there are different sureties to the two notes, and that they are payable at different periods, according to the credit on which the negroes and other parts of the property were sold. But it is not usual for persons to give two bonds at the same time, and nothing is said by the witness of the bond for $402; and, therefore, it will be more satisfactory to have the subject reexamined, so that it may appear from the account of sales, or the sureties to the notes or otherwise, that the two notes were really given for different debts.
Another doubtful item is the sum of $1,062.50, claimed on a transaction of this sort. In October, 1822, Nathan and William W. Chaffin borrowed from the bank at Salisbury, on a note made by Nathan and endorsed by the other, the sum of $2,000, to be invested, as they said, in a pork speculation. On 25 January, 1823, William W. gave to the other his covenant to pay one-half of the sum in (267) *Page 222 
regular bank installments, and on that instrument this charge is founded. The Court would feel more secure of making a right decision if it appeared that the speculation were abandoned, or that it had been completed and the pork sold or divided; upon which points, or any others relative to the matter, the defendant can be again interrogated or the parties offer proof.
The remaining items arise upon two notes, in which, from inspection, it is not clear whether they were intended to be payable to Nathan Chaffin, junior or senior, as the word is abbreviated, and the letters imperfect. The one is for $110, dated 10 March, 1822, and the other is for $200, dated 14 June, 1821. The latter may be explained by proof as to which of the persons sold the land in Ashe County that is mentioned in it. This note has obviously also been cut or mutilated at the bottom. The master thinks it was probably done in the office, in separating it from the deposition in which its execution was proved. But as it has to go before the master again, the plaintiffs will have the opportunity of interrogating the defendant upon every part of the case.
All the exceptions are thus disposed of except the 7th and 11th, which object that the master has not found the values of the lands devised to John A. and George H. Chaffin, respectively, nor the value of the personal estate of the testator which came into the hands of John A. Chaffin; and also object that the plaintiffs in the second bill cannot charge John A. and George H. in respect of the real assets. These, as exceptions, cannot be sustained, because the reference did not include the subjects. Whatever benefit the exceptants may be entitled to from the matter therein set forth, they will, of course, have upon any motion that may be made for further directions.
With the exception of the points recommitted to the master as herein stated, the report must therefore stand
PER CURIAM. Affirmed.
Cited: Flemming v. Murph, 59 N.C. 60; Hughes v. Blackwell, ibid., 77. *Page 223 
(268)